UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| GAIL R. SCHAFFER, | ) | CASE NO. 1:05 CV 2869 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| ASHLAND COUNTY, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On December 13, 2005, plaintiff pro se Gail R. Schaffer filed this action against "Ashland County, through Commissioner's Marilyn Byers." (Compl. at 1.) In the complaint, plaintiff alleges he was unfairly arrested and convicted of a crime he did not commit. He seeks monetary damages in the amount of $1,200,000.00 and return of all of his confiscated weapons.

**Background**

Mr. Schaffer contends he began an extra marital affair with Jeanne Rader in 2000 and resided with her in her home intermittently for two or three years. He claims that during this time period, they "got to playing pranks on one another." (Compl. at 4.) Ms. Rader would allegedly tell her dogs to attack Mr. Schaffer while he was preparing to go hunting, or would take her handgun out of the night stand and hit him playfully, while encouraging the dogs to attack. For his part, Mr. Schaffer liked to sneak up behind Ms. Rader with a gun in his hand and grab her. He

claims they both knew better than to play pranks when holding a weapon but they both participated in this activity.

At some point during their relationship, Mr. Schaffer and Ms. Rader opened a joint checking account. Mr. Schaffer contends he deposited approximately $20,000.00 in that account. He states he later discovered that Ms. Rader spent a substantial part of the money and he demanded repayment. Ms. Rader agreed to allow Mr. Schaffer to remove the remainder of funds from the account, and promised to repay the money she spent as funds became available. He claims he announced that he was terminating their relationship over the incident and she demanded the return of her house key. Mr. Schaffer moved out of Ms. Rader's house and returned to his marital residence.

A few weeks later, Mr. Schaffer was deer hunting and decided to stop at Ms. Rader's home to attempt to collect some of the money. He indicates she was sitting outside when he approached her. He contends he explained politely that he needed at least $ 700.00 to pay for timber he was buying for work. He states she became irrate and an argument ensued. He indicates that as he was leaving, he told her he "had a surprise for her too." (Compl. at 5.) Ms. Rader called the sheriff's department and reported that Mr. Schaffer threatened her. Several days later, Mr. Schaffer returned to Ms. Rader's residence while she was not at home and removed half of the fire wood he previously cut for her use. Ms. Rader reported to the Sheriff that Mr. Schaffer had stolen her fire wood.

The same evening that he took the fire wood, Mr. Schaffer returned to Ms. Rader's residence and again demanded payment of at least $700.00. Her landlord was present as she handed him a check for the amount requested and told him to stay off of her property. He claims he agreed

to that condition; however, when she did not contact him about payment of the remainder of the money, he began calling her at work. She agreed to allow him to come to her house to talk. He contends that meeting went well, and the two parted on friendly terms.

Mr. Schaffer alleges that some time went by after that meeting and he still had not heard from Ms. Rader regarding the payment of the monies she owed to him. He contends that on December 12, 2003, he was hunting at a farm 2.5 miles from Ms. Rader home. He states deer movement was slow so when he spotted a coyote, he decided to go after it. He claims he put his bow back in his truck, grabbed his .22 caliber hand gun and followed the coyote as it headed in the direction of Ms. Rader's house. As he approached Ms. Rader's home, he states he decided to stop in to see if she had the remainder of the money she owed him. He indicates she was just arriving home, so he decided to play a prank on her similar to the ones he had played on her when they were still a couple. He waited until she was opening the door, then, with the .22 caliber gun in his hand, stepped up and grabbed her from behind saying, "Come on lets go for a walk and talk and maybe have sex like before." (Compl. at 5.) Ms. Rader made a noise and pushed forward causing both of them to tumble to their knees. She asked him what he was doing and he replied that he "just wanted to go for a walk and talk." (Compl. at 5.) She demurred saying she needed to let the dogs out. He claims at that point, they got into a scuffle over the gun, and Ms. Rader's hand was cut. They agreed to go into the house to talk. Mr. Schaffer warned her to keep her dogs from attacking him. He told her, "dogs that bite usually get shot," but claims it was just a comment as to what has happened to other dogs in the past. (Compl. at 5.) Once inside the house, Mr. Schaffer told her he hoped she wasn't planning on calling her landlord to involve him again. Ms. Rader allegedly told him she was not planning on doing so and indicated she needed to use the restroom. He stood close

enough to the bathroom to prompt her to say that he didn't need to watch her. He states, "I couldn't see her anyway except for one knee and I told her I wasn't watching and it wasn't anything I haven't seen before." (Compl. at 5.)

Ms. Rader again stated that she needed to walk the dogs. Mr. Schaffer alleges he agreed to go with her. She indicated to him that she did not have the money but would get it soon. He claims he let the subject drop but told her he had recently written a letter to the Bureau of Motor Vehicles to inform them that she was still driving a school bus even though she failed a drug test. He indicates Ms. Rader became agitated and when they got back to the house, told him she had to go to the drug store before it closed. He asked if she could give him a ride back to his truck. She agreed to do so, but asked him to unload the bullets from the gun and give them to her. He claims he complied with her request.

Later that night, sheriff's deputies came to Mr. Schaffer's residence and arrested him. He states he was surprised to learn that Ms. Rader telephoned law enforcement authorities and told them Mr. Schaffer had jumped her from behind, held a gun to her face and threatened to take her into the woods, rape her, and kill both of them. She told the officers that they had struggled for the gun which she had briefly knocked away, but that Mr. Schaffer had regained control of the weapon. She indicated that she tried to calm him down by inviting him into the house and eventually gave him a ride to his truck. He contends Ms. Rader fabricated these charges because he had written the letter to the Bureau of Motor Vehicles and because she wanted to avoid repaying the monies she owed to him. Mr. Schaffer was charged with assault, attempted rape and abduction. Bond was set at $ 50,000.00. A civil protection order was issued against him and the court ordered that all of his weapons be confiscated. The attempted rape and abduction charges were eventually

dropped and a new charge of kidnapping with a gun specification was added to the assault charge. Mr. Schaffer was found not guilty of kidnapping, but was found guilty of assault. He was sentenced to six months in jail and ordered to pay a fine of $ 1,000.00 and court costs of $ 2,300.00. He finds this to be very unfair because he "didn't ask to be there under false charges." (Compl. at 6.) He also complains that the court refused to return his weapons after he served his sentence. He asserts that Ashland County should be held responsible for charging him with offenses he did not commit, failing to return weapons belonging to him and his wife, and for ruining his reputation in the community. He further claims the Ashland County Common Pleas Court Judge, the prosecution, and the Ashland City School conspired to cover up Ms. Rader's failed drug test. He seeks an award of $ 1,200,000.00.

**Analysis**

While pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court may dismiss an action sua sponte if the complaint is so "implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion" as to deprive the court of jurisdiction. Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999)(citing Hagans v. Lavine, 415 U.S. 528, 536-37 (1974)). Mr. Schaffer's complaint satisfies these criteria.

As an initial matter, Mr. Schaffer cannot raise claims in a civil action for damages if a favorable decision in that action would call into question the validity of his conviction or sentence. See Edwards v. Balisok, 520 U.S. 641, 646 (1997); Heck v. Humphrey, 512 U.S. 477, 486 (1994). The holding in Heck applies whether plaintiff seeks injunctive, declaratory or monetary relief. Wilson v. Kinkela, No. 97-4035, 1998 WL 246401 at *1 (6th Cir. May 5, 1998). Although Mr. Schaffer fails to identify any legal claims in his complaint, it is apparent on the face

of the pleading that he is alleging he did not intentionally injure Ms. Rader and that her version of the events is inaccurate and self-serving. If the court were to find Mr. Schaffer's allegations to be correct, it would necessarily call into question of the validity of his assault conviction. As such, he must also allege his assault conviction was declared invalid by either an Ohio state court or a federal habeas corpus decision. To the contrary, Mr. Schaffer alleges he accepted the conviction and served his sentence. He cannot now file a civil action to collaterally attack that conviction or the sentence he received.

Moreover, even if Mr. Schaffer had presented allegations which were cognizable in a civil action, he has not identified any legal claims and none are readily apparent from the complaint. Principles requiring generous construction of pro se pleadings are not without limits. See Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985). A complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements. See Schied v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988). District courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments. Beaudett, 775 F.2d at 1278. To do so would "require ...[the courts] to explore exhaustively all potential claims of a pro se plaintiff, ... [and] would...transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Id. at 1278. Plaintiff's failure to identify a particular legal theory in his complaint places an unfair burden on the defendants to speculate on the potential claims that plaintiff may be raising against them and the defenses they might assert in response to each of these possible causes of action. See Wells v.

Brown, 891 F.2d at 594. Moreover, the defendants named in the case caption appear to have little or no connection to the facts alleged in the pleading. Ms. Byers is not identified anywhere in the complaint and does not appear to have participated in the actions in any discernable way. Even liberally construed, the complaint does not sufficiently state the federal claim or claims upon which plaintiff intends to base his action.

## Conclusion

Accordingly, this action is dismissed. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[1]

IT IS SO ORDERED.

   S/John R. Adams March 6, 2006
JOHN R. ADAMS
UNITED STATES DISTRICT JUDGE

---

[1] 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.